**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| J.A., by and through D.J.,<br><br>Plaintiffs,<br><br>v.<br><br>COBB COUNTY SCHOOL DISTRICT,<br><br>Defendant. | Civil Action No: 1:25-cv-00379-SDG |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS**

Under Federal Rules of Civil Procedure 12(b)(1) and (6), Defendant Cobb County School District ("CCSD") files this memorandum of law in support of its Motion to Dismiss Plaintiffs' First Amended Complaint.

## I. INTRODUCTION.

There is no question that governmental entities have become prime targets for cyberattacks.[1] In March 2018, the City of Atlanta suffered a ransomware attack that brought many governmental operations to a screeching halt, ultimately costing the

[1] Adam Sneed, *What Cities Can Learn From Atlanta's Cyberattack*, BLOOMBERG.COM, https://www.bloomberg.com/news/articles/2019-10-29/what-cities-can-learn-from-atlanta-s-cyberattack (last visited April 11, 2025).

City many millions of dollars.[2] And many other local governments have also been victimized by hackers.[3] Nobody wants to be next.

It is no surprise, then, that CCSD takes cyber threats seriously, implementing policies that impose severe disciplinary consequences for severe technology-related infractions. In exchange for the privilege of using CCSD's technology resources or accessing CCSD's network, students must adhere to CCSD's technology use policies. And those policies flatly prohibit any attempt to hack or alter CCSD's network or technology resources. The policy could not be clearer.

In February 2024, J.A. broke that covenant, using a notorious password-stealing software to hack CCSD's network. In doing so, he violated his fellow students' privacy rights, and he put CCSD's operations at risk. That willful, pre-meditated misconduct proved he could no longer be trusted with access to CCSD's technology resources and network.

So CCSD revoked J.A.'s technology privileges, exactly as contemplated under CCSD's technology use policy and student code of conduct. Trying to avoid the consequences for his severe misconduct, J.A. has now sued CCSD, claiming that CCSD is discriminating against him based on his disabilities. But J.A.'s premeditated decision to install a notorious hacking software on his laptop had

[2] *Id.*
[3] *Id.*

nothing to do with his disability. And CCSD applied its disciplinary policy in an even, fair manner.

The Court should therefore recognize this lawsuit for what it is: a cynical attempt to evade responsibility for serious misconduct that poses an intolerable cybersecurity threat to CCSD and the students it must serve. The case should be dismissed.

## II. STATEMENT OF FACTS.

J.A. is a fifteen-year-old, CCSD student with an individualized education program ("IEP"). [Doc. 9 ¶ 6.] J.A. was eligible for special education services because of his autism and other health impairment ("OHI") which was based on diagnoses of an ADHD, anxiety, depression, and PTSD. [*Id.* ¶ 7.] D.J. is J.A.'s parent and representative in this lawsuit. [*Id.* at 1.]

On February 28, 2024, J.A. installed a password-stealing software called Mimikatz on his CCSD-issued laptop. [*Id.* ¶ 17.] Mimikatz is a notorious hacking software often used in cyber-attacks by exploiting weaknesses in Microsoft Windows. *See* WIKPEDIA.ORG, https://en.wikipedia.org/wiki/Mimikatz (last visited March 17, 2025); MICROSOFT.COM, https://www.microsoft.com/en-us/wdsi/threats/threat-search?query=Hacktool:Win32/Mimikatz (last visited March 17, 2025). Plaintiffs acknowledge that J.A. exploited a "gap" in CCSD's network security, compromising his fellow students' privacy rights. [Doc. 9 ¶ 67.]

As a result, CCSD initially suspended J.A. for eight days. [*Id.* ¶ 17.] CCSD later held a manifestation determination review ("MDR") meeting to address the hacking incident, determined it was *not* a manifestation of J.A.'s disability, and suspended J.A. for the rest of the school year. [*Id.*]

CCSD then tried to schedule an IEP meeting to determine J.A.'s special education services while he was suspended, but his parents refused to attend another meeting. [*Id.* ¶ 19.]

On May 13, 2024, CCSD sent D.J. a letter informing her that, under CCSD's "Technology Acceptable Use" policy, CCSD was permanently revoking J.A.'s use of all CCSD technology and network resources. [*Id.* ¶ 20.] The letter also prohibited J.A. from using personal technology devices on campus. [*Id.*] A true and accurate copy of that letter is attached as **Ex. 1**.

A true and accurate copy of Policy IFBG-R (titled "Technology Acceptable Use") is attached as **Ex. 2**. That policy provides, "Students . . . who violate District/school policies, Rules or regulations governing the use of the District's technology and network resources may have their network privileges suspended or revoked." (Policy IFBG-R, § C.) Student violators are also subject to disciplinary action under District Administrative Rule JCDA-R (titled "Student Code of Conduct"), a true and accurate copy of which is attached as **Ex. 3**. (*Id.*)

In turn, the Student Code of Conduct prohibits any attempt to hack or alter CCSD's network or technology resources. (Policy JCDA-R, §§ II.W.1. and 2.) For middle-school students (like J.A.), those types of violations may be considered severe acts of misconduct that warrant expulsion or even law enforcement referral. (*Id.* §§ I.B.3.f and II.W.1.- 2.) Violators also "may lose the privilege of utilizing District-issued technology for a time period to be determined by administration, which may include a permanent revocation of technology privileges." (*Id.* § I.J.) "Administration may also limit use of student-owned technology on school campuses or use of the District network for academic purposes." (*Id.*)

Despite all this, J.A.'s parents allege that the MDR team got it wrong, and they claim the hacking incident was a manifestation of J.A.'s autism. [Doc. 9 ¶¶ 18, 46.] They claim the MDR team should have considered the DSM-5's diagnostic criteria for ASD. [*Id.* ¶¶ 32, 47.] But the DSM-5's diagnostic criteria say nothing about people with autism having a propensity for cyber-crimes or computer hacking. (*See generally* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 5th ed., Autism Spectrum Disorder, attached as **Ex. 4**.)

In any event, D.J. filed a due process hearing request ("DPHR") with the Georgia Office of State Administration ("OSAH"), alleging violations of the IDEA, ADA, and Section 504. (*See* DPHR, attached as **Ex. 5**, ¶ 5.) The DPHR complained only about the behavioral supports CCSD provided J.A. for his technology-related

infractions and the discipline he received for the hacking incident. (*Id.* ¶¶ 7-15.) The DPHR said nothing about J.A.'s history of physical aggression or other problem behaviors. (*See generally id.*)

After the hearing, the administrative law judge ("ALJ") issued a Final Decision finding that J.A. had failed to prove his claims. (*See* Final Decision, attached as **Ex. 6**, at 27 (§ IV).)

Plaintiffs now appeal that decision and allege that, under Title II and Section 504, CCSD unlawfully discriminated against them by not modifying its technology policies to allow J.A. to continue accessing CCSD's technology-based resources and programming. [Doc. 9 ¶¶ 56, 62-63, 65.A.-D.] And in their newly added Count III, Plaintiffs now claim that CCSD was negligent in failing to prevent J.A. from hacking its network and accessing confidential student data. [*Id.* ¶¶ 65-70.] In particular, they claim CCSD should have done a better job of "monitoring" and preventing the risks of "students bringing sticks/flash drives to school and loading unauthorized programs onto district-issued computers during class," as J.A. did here. [*Id.* ¶ 65.]

## III. MEMORANDUM OF LAW.

Under Rule 12(b)(6),[4] this Court should dismiss this action, for four main reasons. First, under Counts I and II, J.A. failed to exhaust his administrative

[4] Under Rule 12(b)(6), a complaint is subject to dismissal if it fails "to state a claim upon which relief can be granted." To withstand dismissal, the "complaint must contain sufficient factual matter, accepted as true," to state a facially plausible claim

remedies for any claim challenging the behavioral supports he received for non-technology-related offenses. Second, Count I fails because J.A. has pointed to no error in the ALJ's analysis. Third, Count II also fails because Plaintiffs have not pled disability discrimination claims under Section 504 or Title II. Fourth, CCSD has sovereign immunity from the newly pled state-law claim under Count III.

### A. Under Counts I and II, J.A. failed to exhaust his administrative remedies for any claim based on the alleged denial of FAPE concerning J.A.'s non-technology-related behavioral issues.

Under the IDEA, a school district must provide disabled students with a free appropriate public education ("FAPE"), including special education and related

---

for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The complaint's allegations must show "more than the sheer possibility that the defendant has acted unlawfully." *Id.* Though the court must construe all well-pled factual allegations in the light most favorable to the plaintiff, it may reject mere "legal conclusion[s]." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Court may consider certain matters outside the four corners of the complaint: (1) documents incorporated by reference into the complaint, (2) facts subject to judicial notice, and (3) documents that are both "central to the complaint" and have unquestioned authenticity. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007); *Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018). "A document is central to a complaint when it is a 'necessary part of [the plaintiff's] efforts to make out a claim.'" *Basson*, 741 F. App'x at 771. And when such document contradicts the allegations in a pleading, the document controls. *See Muhammad v. O'Brien*, No. 1:20-CV-4802-MLB-JSA, 2021 WL 3417598, at *15 (N.D. Ga. Apr. 5, 2021), *report and recommendation adopted*, No. 1:20-CV-4802-MLB, 2021 WL 3464384 (N.D. Ga. Aug. 6, 2021).

services. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017). The student's IEP usually sets forth these services. *Id.* Since parents and other IEP team members may disagree on the appropriate services for the student, the IDEA sets forth a detailed remedial scheme for resolving FAPE-related disputes between parents and school districts. *Id.* at 159.

Under 20 U.S.C. § 1415, the parent first must file a due process complaint that contains, among other things, "a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem" and "a proposed resolution of the problem. . . ." 20 U.S.C. §§ 1415(b)(7)(A)(ii)(III)-(IV) & (c)(2). That pleading generally triggers a "preliminary meeting" between the parties and possibly a formal mediation. *Fry*, 580 U.S. at 159 (citing 20 U.S.C. §§ 1415(e) & (f)(1)(B)(i)). If the impasse continues, the matter proceeds to a due process hearing before an ALJ. *Id.* (citing 20 U.S.C. §§ 1415 (f)(1)(A) & (3)(A)(i)).

If the parent is unhappy with the outcome of that administrative hearing, she may appeal the ALJ's decision to a federal district court. *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)). But the scope of that judicial review is limited to the scope of "the [due process] complaint presented pursuant to" § 1415. 20 U.S.C. § 1415(i)(2)(A).

Under 20 U.S.C. § 1415(l), parents must exhaust these administrative remedies before suing under the IDEA or bringing any other federal claims seeking

relief available under the IDEA. *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 149-50 (2023). A parent cannot circumvent this administrative exhaustion requirement simply by bringing a FAPE-related claim under a non-IDEA statute. *Fry*, 580 U.S. at 169-70.

J.A. failed to exhaust his administrative remedies before bringing claims based on the alleged denial of FAPE for non-technology-related behavioral problems.

Under Count I, J.A.'s IDEA claims are the easiest call. Though J.A. now alleges that his DPHR request was broad enough to cover alleged FAPE deprivations relating to all of his behavioral issues [Doc. 9 ¶ 44], a review of his DPHR shows otherwise. (DPHR ¶¶ 7-15.) Since both the DPHR and Final Decision are central to J.A.'s claims, this Court may properly consider them even at the pleading stage. *See Basson*, 741 F. App'x at 771.

In his DPHR, J.A. focused solely on the sufficiency of supports relating to J.A.'s technology-related offenses, including the most recent hacking violation that resulted in the revocation of his technology privileges. (*See* DPHR ¶¶ 7-15.) J.A. did not challenge the sufficiency of the behavioral supports he received for problem behaviors unrelated to technology use. (*See generally* DPHR; *see* Final Decision at 17-18 (¶¶ 7, 12).) And since J.A.'s non-technology-related behavioral supports went unchallenged, the ALJ correctly found they could not be considered below. [Doc. 9

¶ 44.] (Final Decision at 17-18 (¶¶ 7, 12).) Because J.A. failed to raise those particular IDEA claims before OSAH, he did not exhaust his pre-suit remedies under the IDEA. Those claims are therefore barred.

Count II admittedly presents a closer call, because Plaintiffs bring those claims under Section 504 and Title II rather than the IDEA. But no matter what statute the plaintiff sues under, if the claims seeks an IDEA remedy, it is subject to the IDEA's administrative exhaustion requirements. *Luna Perez*, 598 U.S. at 149-50. Count II seeks only IDEA remedies, such as modification of J.A.'s IEP, compensatory education, and litigation expenses incurred in the due process hearing. [Doc. 9 ¶ 65.] Plaintiffs' Count II claims are therefore subject to IDEA exhaustion. *See Luna Perez*, 598 U.S. at 149-50. And as with his IDEA claims under Count I, J.A.'s Title II/Section 504 claims are now barred to the extent they are based on alleged deprivations of FAPE that were not raised in his DPHR. *See* 20 U.S.C. § 1415(l).

**B. Under Count I, J.A. has pointed to no error in the ALJ's Final Decision.**

In Count I, J.A. appeals the ALJ's Final Decision under the IDEA. Under 20 U.S.C. § 1415(i)(2)(A), an "aggrieved" party may bring a civil action appealing an ALJ's "findings and decision" in an IDEA proceeding. The district court reviews de novo the ALJ's findings and decision, but the district court must give due weight to the ALJ's findings. *CP v. Leon Cnty. Sch. Bd. Fla.*, 483 F.3d 1151, 1153 (11th Cir.

2007). Under Rule 12(b)(6), an IDEA appeal is subject to dismissal if the appellant's complaint does not comply with the federal pleading standard. *Jenkins v. Butts Cnty. Sch. Dist.*, 984 F. Supp. 2d 1368, 1372 (M.D. Ga. 2013).

This Court should dismiss Count I because J.A. has not met that pleading standard. As discussed above, if J.A. challenges the Final Decision on appeal, his claim is limited solely to the ALJ's findings and conclusions relating to sufficiency of the behavioral supports J.A. received for his technology-related misconduct. But J.A. has highlighted no colorable claim of error in the ALJ's analysis.

In the Final Decision, the ALJ denied J.A.'s request for relief under the IDEA. (Final Decision at 1.) The ALJ made many detailed, factual findings relating to the hacking incident, CCSD's MDR determination that the incident was unrelated to J.A.'s autism, and the resulting disciplinary action. (*Id.* at 11-15.) On appeal, J.A. does not allege that any of those factual findings were erroneous. [*See generally* Doc. 9.] Instead, he just disagrees with the outcome of the OSAH hearing.

The closest J.A. comes to enumerating any error on appeal is accusing the ALJ's decision of being "conclusory." [Doc. 9 ¶ 55.] But even a cursory review of the Final Decision dispels that argument. Instead, the ALJ scrutinized all six allegations of error in J.A.'s DPHR, finding that they were unsupported by the administrative record. (Final Decision at 18-27.) The ALJ's rationale was supported by detailed citation to the hearing record. (*Id.*) J.A. may disagree with the ALJ's

decision, but the content of the Final Decision puts to rest any argument that the ALJ's analysis was superficial or "conclusory."

Since J.A. has not plausibly alleged factual or legal error by the ALJ, his Amended Complaint leaves this Court with nothing to review. As a result, this Court should dismiss Count I under Rule 12(b)(6), for failure to state a claim under the IDEA.

### C. Under Count II, Plaintiffs have not pled a disability discrimination claim under Title II or Section 504.

Title II and Section 504 both prohibit discrimination on the basis of disability in the provision of public services. *J.S., III by and through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). Under both statutes, disability claims are generally governed by the same legal standards. *Id.* To state a disability discrimination claim, the plaintiff must allege three elements: (1) he is a qualified individual with a disability; (2) he was excluded from or denied a public benefit; and (3) the deprivation was because of his disability. *Id.* Within that framework, courts recognize theories of disparate treatment and failure to accommodate. *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1327 (N.D. Ga. 2017). Plaintiffs have not plausibly alleged disability discrimination under either theory.

#### i. Plaintiffs have not plausibly alleged disparate treatment.

To prevail on a disability discrimination claim under the ADA or Section 504, "a disabled person must prove . . . she was excluded from participation in or denied

the benefits of [the defendant's] services, programs, or activities, or otherwise was discriminated against on account of her disability." *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 831 (11th Cir. 2017). But to prove discrimination in the education context, the plaintiff must show "something more than a mere failure to provide" FAPE under the IDEA. *J.S.*, 877 F.3d at 985.

At a minimum, the plaintiff must show the defendant was "deliberately indifferent" to his "federally protected rights." *Silva*, 856 F.3d at 831. Deliberate indifference is an "exacting standard." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019). It "plainly requires more than gross negligence," *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 344 (11th Cir. 2012), and is more like a standard of "intentional" wrongdoing. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999). An organizational defendant is deliberately indifferent only if it "*knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood." *Liese*, 701 F.3d at 344 (emphasis in original). There must be an "official decision" not to remedy *known* discrimination. *Silberman*, 927 F.3d at 1135. In short, the student instead must show "bad faith or gross misjudgment" by the district. *W.C. ex rel. Sue C. v. Cobb Cnty. Sch. Dist.*, 407 F. Supp. 2d 1351, 1364 (N.D. Ga. 2005).

For instance, in *J.D.P. v. Cherokee County, Georgia School District*, a student with autism, ADHD, and opposition defiance disorder sued after district officials

physically restrained him in a way that violated his behavior intervention plan ("BIP"). 735 F. Supp. 2d 1348, 1370-71 (N.D. Ga. 2010). The student claimed that the district had developed and implemented a deficient 504 plan and had not properly trained school officials on de-escalation techniques. *Id.* at 1366-1369. Despite those alleged shortcomings by the district, this Court held that the student failed to prove disparate treatment. *Id.* at 1371. During the challenged restraint incident, the school officials were trying to address the student's severe behavioral problems—not targeting him because of his disabilities. *Id.*

Here, Plaintiffs' allegations likewise preclude any inference of unlawful motive by CCSD. Plaintiffs may think CCSD failed to provide J.A. FAPE, but those allegations do not plausibly suggest "bad faith or gross misjudgment" by school officials. *See W.C.*, 407 F. Supp. 2d at 1364. And Plaintiffs cannot salvage their claim with conclusory allegations of discriminatory motive [*see, e.g.*, Doc. 9 ¶ 61]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (conclusory allegations of discriminatory intent do not plausibly support an inference of discriminatory intent). At bottom, Plaintiffs' mere disagreement with the educational services provided does not suggest unlawful discriminatory motive necessary to support a disparate treatment claim under Title II or Section 504.

**ii. Plaintiffs have not plausibly alleged a failure to accommodate.**

Under Title II and Section 504, unlawful discrimination may include the defendant's failure to make a reasonable accommodation to the known, disability-related, physical or mental impairments of an otherwise qualified individual, unless the defendant can show that the accommodation would impose an undue hardship on the defendant's operations. *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010). So to state a failure-to-accommodate claim, the plaintiff must allege three elements: (1) he has a "disability"; (2) he is a "qualified" individual; and (3) the defendant failed to provide a reasonable accommodation. *Id.*

On the third element, a plaintiff is entitled only to a reasonable accommodation, not the best accommodation or his preferred accommodation. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997). In some cases, a reasonable accommodation may include a modification of the defendant's policies. *Id.* at 1285. But the mere fact that the ADA lists something as an example of a potential accommodation does not make it per se reasonable. *Terrell v. USAir*, 132 F.3d 621, 626 (11th Cir. 1998). At all times, the plaintiff has the burden of showing that his requested accommodation was reasonable. *Stewart*, 117 F.3d at 1286.

And in determining the reasonableness of the plaintiff's requested accommodation, courts must consider whether the accommodation poses a safety

risk to others. *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 309 (1st Cir. 2003). The ADA does not require a defendant to accommodate a plaintiff in a way that "poses a direct threat to the . . . safety of others." *Id.* (citing 42 U.S.C. § 12182(b)(3)). So if a plaintiff demands that the defendant modify a policy as an accommodation, courts must consider whether such policy modification would be harmful to others. *Id.*

J.A.'s requested accommodation is facially unreasonable because it presents a direct threat to the safety of CCSD's operations and students. The only educational program at issue is J.A.'s access to computer-based instruction and resources, which J.A. lost as a disciplinary consequence for the hacking incident. [Doc. 9 ¶ 63.] But under CCSD's Code of Conduct, that hacking violation was a serious conduct infraction that could have warranted expulsion or law enforcement referral. (Policy JCDA-R (Ex. 3) §§ I.B.3.f and II.W.1.-2.) And even J.A. acknowledges his conduct violated his fellow students' privacy rights. [Doc. 9 ¶ 67.]

To prevent a repeat scenario, CCSD permanently revoked J.A.'s technology privileges and prohibited him from using personal technology devices on campus, as provided under CCSD's technology and discipline policies. [Doc. 9 ¶ 20.] (*See* 5/13/2024 Letter (Ex. 1); Policy IFBG-R (Ex. 2) § C; Policy JCDA-R (Ex. 3) § I.J.) J.A. now claims that CCSD should have accommodated him by letting him off the hook for his egregious misconduct.

That claim fails because J.A.'s own allegations betray the facial unreasonableness of his requested accommodation. In his newly pled negligence count, J.A. essentially argues that CCSD was unreasonable in failing to prevent him exploiting cyber-security gaps in CCSD's network. [Doc. 9 ¶¶ 65, 68.] Yet J.A. also claims CCSD should continue giving him network access. [*Id.* ¶ 63.] He can't have it both ways.

At bottom, J.A. demands that CCSD do what he separately claims to be unreasonable and dangerous: allowing him to continue access CCSD's network. That demand is facially unreasonable because it would pose an unreasonable risk to other students' privacy rights, not to mention CCSD's operations as a whole.

J.A. has removed any speculation from the equation. He is a proven violator who trampled his fellow students' privacy rights and imperiled CCSD's operations. The ADA does not require CCSD to make itself vulnerable to another hacking attack by J.A.

**iii. D.J. also cannot maintain an associational discrimination claim.**

As this Court has held, both Title II and Section 504 prohibit only discrimination against individuals with disabilities. *Todd*, 236 F. Supp. 3d at 1339-42. Neither statute permits claims based on theories of associational discrimination brought by non-disabled person. *Id.* And even if non-disabled persons could

maintain associational discrimination claims, they would still have to allege that they were *personally* excluded from the statutes' guarantees. *Id.* at 1342.

D.J.'s associational discrimination fails on all fronts. Title II and Section 504 do not apply to him, because he has no disability. *Id.* at 1339-42. And he has not alleged that CCSD personally discriminated against him based on J.A.'s disability. As a result, this Court should dismiss any claim D.J. asserts on behalf of himself.

**D. This Court lacks subject-matter jurisdiction over Count III, because CCSD's sovereign immunity bars Plaintiffs' newly pled state-law claims.**

Under Rule 12(b)(1), this Court should also dismiss Plaintiffs' newly pled state-law claims on sovereign immunity grounds. Under Georgia law, the doctrine of sovereign immunity protects government entities from lawsuits unless their immunity has been waived. *Gilbert v. Richardson*, 264 Ga. 744, 749 (1994); *Everson v. DeKalb Cnty. Sch. Dist.*, 344 Ga. App. 665, 666 (2018). Sovereign immunity applies to all departments, agencies, and political subdivisions of the State of Georgia, including county school districts. *Tift Cnty. Sch. Dist. v. Martinez*, 331 Ga. App. 423, 425 (2015); *Coffee Cnty. Sch. Dist. v. Snipes*, 216 Ga. App. 293, 294 (1995); *Crisp Cnty. Sch. Sys. v. Brown*, 226 Ga. App. 800, 800-01 (1997); *see also* Ga. Const., Art. I, Sec. II, Par. IX(e). Sovereign immunity is not an affirmative defense that must be established by the party seeking its protection. *Ga. Dep't of Corr. v. James*, 312 Ga. App. 190, 193 (2011). Rather, it is an immunity from suit altogether and is a threshold issue going to the trial court's subject matter jurisdiction

over any claim to which it applies. *City of Tybee Island, v. Harrod*, 337 Ga. App. 523, 524 (2016); *McCobb v. Clayton Cnty.*, 309 Ga. App. 217, 217-18 (2011).

Except as specifically provided in the Georgia Constitution, sovereign immunity "can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Ga. Const., Art. I, Sec. II, Par. IX (e); *Snipes*, 216 Ga. App. at 294. "[T]he party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver." *Pelham v. Bd. of Regents of Univ. Sys. of Ga.*, 321 Ga. App. 791, 791 (2013). To do so, the plaintiff must point to a specific legislative act explicitly waiving sovereign immunity. *McCobb*, 309 Ga. App. at 218; *Board of Regents of Univ. Sys. of Ga. v. Daniels*, 264 Ga. 328, 329 (1994). And the plaintiff must do so in his complaint. *McDaniel v. Yearwood*, No. 2:11-CV-00165, 2012 WL 526078, *4 (N.D. Ga., Feb. 16, 2012) (dismissing claim where plaintiff failed to allege valid waiver of sovereign immunity); *Thomas v. Harvard*, No. 1:05-CV-122-RLV, 2006 WL 938748, *7 (N.D. Ga., Apr. 10, 2006) (same).

CCSD has sovereign immunity from Plaintiffs' newly pled state-law claims under Count III. In their Amended Complaint, Plaintiffs identify no valid legislative waiver of CCSD's sovereign immunity. [*See generally* Doc. 9 ¶¶ 65-70.] Nor could they, since none exists. *See Brown*, 226 Ga. App. at 801 ("We cannot find and appellants do not cite us to any promulgated legislative act which specifically

provides that the sovereign immunity of school systems has been waived and the extent of such waiver."). Since CCSD's sovereign immunity deprives this Court of subject-matter jurisdiction over Count III, this Court should dismiss the claim under Rule 12(b)(1).

## IV. CONCLUSION

For all these reasons, this Court should dismiss this lawsuit with prejudice.

Respectfully submitted this 11th day of April 2025.

*/s/ Jeffrey R. Daniel*
Jeffrey R. Daniel (GA Bar No. 949075)
Lauren W. George (GA Bar No. 974096
*Counsel for Defendant*

PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street NE, Suite 1500
Atlanta, Georgia 30309
Phone: (678) 690-5750
jeffdaniel@parkerpoe.com
laurengeorge@parkerpoe.com

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing was prepared using Times New Roman font, 14-point type, which is one of the font and print selections approved by the Court in L.R. 5.1(C).

This 11th day of April 2025.

*/s/ Jeffrey R. Daniel*
Jeffrey R. Daniel (GA Bar No. 949075)
Lauren W. George (GA Bar No. 974096)
*Counsel for Defendant*

PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street NE, Suite 1500
Atlanta, Georgia 30309
Phone: (678) 690-5750
jeffdaniel@parkerpoe.com
laurengeorge@parkerpoe.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of April, 2025, I electronically filed DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Michael F. Braun, Esq.
ATTORNEY AT LAW
5016 Centennial Boulevard
Suite 200 Nashville, TN 37209
mfb@braun-law.com

*/s/ Jeffrey R. Daniel*
Jeffrey R. Daniel
Georgia Bar No. 949075
*Counsel for Defendant*

PARKER POE ADAMS & BERNSTEIN LLP
1075 Peachtree Street NE, Suite 1500
Atlanta, Georgia 30309
Phone: (678) 690-5750
Fax: (404) 869-6972
jeffdaniel@parkerpoe.com